UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 5:14-CR-45-DCR EBA-1

UNITED STATES OF AMERICA					PLAINTIFF,

V.			**RECOMMENDED DISPOSITION**

NORSHAWN MICHAEL DUPLESSIS,				DEFENDANT.

\*\*\* \*\*\* \*\*\* \*\*\*

This Court conducted an evidentiary hearing in this matter on October 5, 2018 [R. 120], following the Sixth Circuit Court of Appeals' April 20, 2018 Order vacating the Court's Judgment [R. 92], and remanding this case for a hearing on the ineffective assistance of counsel claims found in Duplessis's Motion to Vacate pursuant to 28 U.S.C. § 2255 [R. 75; R. 100; R. 101]. Having reviewed the record, and in light of the recently-held evidentiary hearing, this matter is ripe for consideration and preparation of recommended disposition. 28 U.S.C. § 636(b)(1)(B).

### I.      FACTS AND PROCEDURAL HISTORY

Norshawn Michael Duplessis, a *pro se* federal prisoner "pleaded guilty to possession with intent to distribute 100 or more grams of heroin, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)." [R. 100] (citing *United States v. Duplessis*, No. 14-6558 (6th Cir. Feb. 3, 2016) (order)); [R. 74]. Duplessis received a 120-month sentence for possession of heroin, running consecutive to a sixty-month sentence for possession of a firearm. [R. 59]. Thereafter, Duplessis appealed to the Sixth Circuit Court of Appeals; however, the Court dismissed his appeal pursuant to the appellate waiver provision in his plea agreement. [R. 60]; [R. 74]. Nevertheless, the Court noted that Duplessis's appellate-waiver provision did not prevent him from challenging his ineffective

assistance of counsel claim, but that this issue would not be considered on direct appeal. [R. 74 at 3].

In September 2016, Duplessis filed a Motion to Vacate pursuant to 28 U.S.C. § 2255, raising several claims, including two ineffective-assistance-of-trial-counsel claims. First, Duplessis claimed that he received ineffective assistance during the change-of-plea proceedings because his attorney failed to provide him with correct advice concerning the elements of a § 924(c) offense. [R. 75 at 4]. Second, Duplessis claimed that his attorney should have moved to have the firearm subjected to DNA and fingerprint testing. [*Id.* at 5]. Duplessis also requested an evidentiary hearing and sought to have counsel appointed to represent him at the hearing. [R. 75-1 at 17]. On March 30, 2017, this Court concluded that Duplessis's ineffective assistance of counsel claims failed on the merits, and ultimately denied his motion to vacate and declined to issue a Certificate of Appealability. [R. 91]. Further, because the Court found the record to conclusively demonstrate that Duplessis was not entitled to relief on these claims, his requests for an evidentiary hearing and the appointment of counsel were also denied. [*Id.*].

On April 28, 2017, Duplessis filed a Notice of Appeal pertaining to this Court's denial of his Motion to Vacate and the denial of a Certificate of Appealability. [R. 93]. On October 23, 2017, the Sixth Circuit Court of Appeals granted Duplessis's Certificate of Appealability application and Motion to Proceed *in forma pauperis*, as well as directed the Clerk to set a briefing schedule on the question whether Duplessis is entitled to an evidentiary hearing on his ineffective assistance claims. [R. 98 at 5].

On April 20, 2018, having found this Court erred in denying Duplessis's claims without conducting an evidentiary hearing, the Sixth Circuit Court of Appeals vacated this Court's

Judgment [R.92], and remanded this case for the purpose of holding an evidentiary hearing. [R. 100 at 2]. In relevant part, the Sixth Circuit Court of Appeals concluded:

> A § 2255 petitioner must receive an evidentiary hearing on his claims "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Duplessis's ineffective-assistance claims depend on credibility determinations and the content of conversations between him and his attorney[, Steven Scharg,] that occurred off the record. Consequently, an evidentiary hearing is required to resolve his claims.

*Id.* (citing *MacLoyd v. United States,* 684 F. Appx'd 555, 561- 62 (6th Cir. 2017)). Thus, pursuant to 18 U.S.C. § 3006A, this Court appointed Patrick Nash, Esq., as counsel for Duplessis, and set the matter for an evidentiary hearing. [R. 102 at 3].

### *Findings from the October 5, 2018 Evidentiary Hearing*

On October 5, 2018, on remand from the Sixth Circuit Court of Appeals regarding Duplessis's Motion to Vacate under 28 U.S.C. § 2255, this matter appeared before the undersigned for a limited evidentiary hearing. [R. 120].[1]

**1. Steven Scharg**

Duplessis's former attorney, Steven Scharg ("Scharg") was the first witness to be called to the stand. Scharg's testimony began with an account of his first meeting with Duplessis, who had conceded to the charge of knowingly possessing heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1), but was in denial to the charge of knowingly possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). [6:45]; [R. 7].

Duplessis had been offered a plea agreement which he allegedly told Scharg he was going to take. [10:27]. On direct examination, Scharg was asked whether he had spoken to Duplessis

---

[1] This proceeding has been recorded in the court's audio file: #KYED-LEX__5-14-CR-45-DCR-EBA_20181005_101315. Specific portions of this recording have been referenced throughout these findings.

about what was necessary to prove the elements of a § 924(c) offense, and whether he had explained the idea of a "nexus." Scharg responded:

> I told him that the negativity of going to trial would be the fact that it was his apartment, in his name. He indicated to me that he was the only one that was residing there…I told him that if we went to trial, he probably would have to testify to explain the situation…The testimony is going to come out that no one else was residing there, [and] that when he moved in, I'm sure a landlord would [tell him] that, [he] had a chance to look in [his] apartment before [he] got there, and I'm sure if…if [he] noticed there was a gun there, [he] would have either thrown it out, or gave it to local authorities or whatever. But, if it wasn't [his] gun, [he] wouldn't leave it there. And I [told him that] it's going to be very hard to get around to the fact that there were drugs in your apartment, and that, in drug cases, sometimes drug traffickers keep a weapon near the door, they can argue, because [if] someone comes to rob you or comes to the door you'll have the gun right at access there…A juror could look at it that way. That diminishes your credibility when you get on the witness stand, denying everything.

[11:18 – 12:24]. After having this conversation, Scharg testified that Duplessis wanted to enter a guilty plea because "he didn't want to take a chance." [13:47].

Regarding Duplessis's plea agreement, Scharg testified that it had been mailed out to Duplessis ahead of time to review. [15:50]. Prior to the first re-arraignment, on July 7, 2014, Scharg stated that there was no indication that Duplessis had issues with the plea, and that he was "shocked" when Duplessis could not make the factual basis for the § 924(c) charge. [16:14 - 16:40]. "He admitted that the gun was in his apartment, but he didn't know it was there," Scharg said. [16:43]. Therefore, the Court did not accept the plea and the matter was set for trial. [16:54]; [R. 34]. Scharg then told Duplessis, "For me, the worst thing you can do is — if you can't make the factual basis, then don't embarrass us; we can just set it for trial." [17:13]. According to Scharg, he and United States Attorney, Robert M. Duncan, Jr., sat down with Duplessis, and again advised him about what was necessary to prove the elements of the §924(c) offense. [17:54 - 18:44].

To address Duplessis's concerns about the time he was facing, Scharg testified that he spoke to Mr. Duncan to see if the government would agree to a polygraph test. [18:44 – 19:24]. Scharg told Duplessis that it would be his "only shot," in either getting the count dismissed or amended. [*Id*.]. Thereafter, the polygraph test was set up; Scharg was informed that Duplessis did not pass, or at least, was not truthful as to the Count 2 issue. [19:38– 20:25].

Regarding the allegations against him, Scharg stated that, at no point, did he tell Duplessis that "[he is] guilty because the gun was in [his] apartment," or never did he "force[] him into entering a plea" because he would receive a life sentence if he went to trial. [21:31-22:00]. "I would never tell him that [he would] get life imprisonment because… I would never do that," Scharg said. [22:35]. Scharg also denied Duplessis's allegations that they did not see each other outside of court dates and argued that he had been responsive to all his phone calls. [23:05]. In reference to Duplessis's request for a DNA and fingerprint testing of the firearm, Scharg testified that, from his experience in trial work, the prints could come back inconclusive. Thus, it would be more advantageous for them to not conduct the testing of the firearm, and instead, bring to the jury's attention the *government's* decision to not conduct the testing. [24:50].

Upon being informed that Duplessis did not want to go to trial, Scharg filed another motion for re-arraignment, and Duplessis received a second plea agreement. [28:26]; [R. 41]. Accordingly, on September 8, 2014, Duplessis signed the agreement and entered a guilty plea as to Count 2 of the indictment. [R.44]. During this change-of-plea hearing, Duplessis confirmed that he had reviewed the indictment and discussed the charges with Scharg, as well as confirmed that he was satisfied with the advice and representation that he had been given. [R. 73 at 6]. Likewise, Duplessis acknowledged that he was given the opportunity to read the plea agreement with Scharg and discussed it with him prior to signing it. [*Id*. at 7]. Notwithstanding, on November 25, 2014,

Duplessis sent a letter prior to the sentencing hearing, arguing that Scharg had misled him regarding his guilty plea to Count 2. [29:41]; [R. 48]. Scharg testified that he was "shocked" when he read Duplessis's letter and did not see this coming. [*Id.*]. Thereafter, Scharg filed a Motion to Withdraw Duplessis's Plea of Guilty, as to Count 2 only; however, this motion was denied. [31:17]; [R. 49; R. 53].

On cross-examination, Scharg was confronted about the amount and frequency of contact that he had exercised throughout the course of his representation with Duplessis. [33:08]. It was revealed that Scharg had met with Duplessis a total of six times at the courthouse: on a "pre-indictment occasion", at the arraignment, at the first change of plea hearing on July 7, 2014, at the polygraph test, at the second change of plea hearing on September 8, 2014, and at the sentencing hearing on December 17, 2014. [33:45]. Scharg was again asked how he had advised Duplessis about the elements of the § 924(c) charge. [35:35].

> SCHARG: I would just advise him that the gun was — and I agreed with him near the beginning of my representation— that the gun was in a spot in the closet. I believe it was in the front closet… There has to be a nexus to it; so, in other words, if he just believed that there was a gun in the house, that's not enough to show in furtherance of drug trafficking… I had to explain to him…constructive possession. You could have access to get to that weapon. It could be looked at by a jury, that possibly, they could… find you guilty of that or they can find you not guilty, and say well, because it was in a computer bag, in a closet, maybe you didn't know. But with regard to the drugs that were found in the house, that he was the sole occupant… I believe it makes our, or your credibility, if you had to testify, a little harder to get around. I don't believe a jury would find you as credible if you tried to explain it. [36:06-37:12].
> …
> NASH: So, you felt like, based on these conversations, that he understood the elements?
>
> SCHARG: Yes.

[37:42-37:46]. Scharg was then questioned regarding the accessibility of the gun in the closet, and whether he and Duplessis had spoken about how "accessible the closet was vis a vis the front door." [37:57].

> NASH: As I understand it, the gun, according to the police, was found in this closet we're talking about?
>
> SCHARG: Yes.
>
> NASH: And, as you said, the closet was very near the front door?
>
> SCHARG: Correct.
>
> NASH: Was there any discussion between you all about whether — when the front door was open, did that block the closet?
>
> SCHARG: Could have been, yep. I remember there was some discussion about that.
>
> NASH: Is that something that he was bringing to your attention?
>
> SCHARG: Yes, of course because I was never there.
>
> NASH: You never went to the apartment?
>
> SCHARG: No.
>
> NASH: So, you never saw this — you were relying on what he was telling you?
>
> SCHARG: Yes.

[37:27-38:57]. Subsequently, Scharg was asked about whether he had chosen to pursue certain "elements of a potential defense," or specifically, whether there had been discussions about the possibility of conducting the DNA and fingerprint testing of the gun. [39:02 - 39:39].

> NASH: Was it Norshawn's position that he wanted the gun tested?
>
> SCHARG: From [my] memory… near the beginning of my representation, it could have been near the complaint stage, or a while between the complaint and indictment stage, I think that's when the topic came up… He did request [for us to] get this done.

> And then when I explained to him my strategy, or how I think we're going to [handle this] at trial… He seemed to be fine with it, so there was never any issue about that again.
>
> NASH: So, your memory is that he wanted it tested, but then once you all talked more about it, he sort of acquiesced to your viewpoint of not having it tested?
>
> SCHARG: That's my memory, yes.

[39:41 – 40:23]. In addition to acknowledging that the firearm had not been subjected to DNA and fingerprint testing, further testimony revealed that Scharg had chosen not to pursue other elements in his defense. [48:57]. Scharg conceded to knowing that Duplessis's front door had blocked the closet, that certain items found in the closet, such as women's clothing, would suggest that they did not belong to Duplessis, and that no other government witness had ever seen Duplessis with a gun. Based on all these facts, Scharg admitted that it could have been a triable case. [49:52 – 50:06].

## 2. Norshawn Michael Duplessis

Duplessis was the second witness to be called to the stand. On direct examination, He was first questioned regarding the extent of his conversations with Scharg. [56:59]. Fayette County Detention Center phone records revealed that Scharg and Duplessis had talked a total of twenty minutes — three times — between the first guilty plea on July 7, 2014 and the second guilty plea on August 8, 2014. [1:02:30 - 1:03:17]. In addition to the conversations that were had at the courthouse, Duplessis testified that he continued to tell Scharg that he did not know that the gun was there, and that Scharg continued to tell him that he could still be convicted because the gun was in the same premises as the drugs. [1:03:19 - 1:03:48]. Duplessis was then asked whether Scharg had explained the concept of a "nexus," and how it had been described for the § 924(c) charge.

> DUPLESSIS: [A] Nexus [is] - the gun was in your apartment, the apartment was in your name, and the drugs [were] in your apartment. That's a 924(c).
>
> NASH: That's how the nexus was explained?
>
> DUPLESSIS: That's the nexus, [as] I was told.

[1:01:33 – 1:01:59]. Throughout the hearing, Duplessis maintained that this was his understanding of a nexus and the elements of a § 924(c) charge, as Scharg had advised him.

Regarding the polygraph test, Duplessis argued that he had never seen the results of the test; instead, he was told that he "failed" the test for not having answered correctly the question regarding the Count 2 charge. [1:07:33 – 1:08:08]. Furthermore, Duplessis's testimony revealed that he had allegedly never received discovery, argued that Scharg had never prepared to go to trial, and stated that he was "100%" confident that, if the gun had been tested, there would be no evidence that would implicate him to the crime. [1:08:45 - 1:10:03].

## II.    ANALYSIS

A prisoner seeking relief under 28 U.S.C. § 2255 must allege either "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003). In other words, to warrant relief under § 2255, a prisoner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect of influence on the guilty plea or the jury's verdict. *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2006) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

Duplessis filed a timely motion to vacate his sentence under § 2255, raising two ineffective-assistance-of-trial-counsel claims. The Sixth Circuit applies the *Strickland* two-prong test in evaluating such claims filed within petition for a writ of habeas corpus. *Towns v. Smith,* 395 F.3d

251, 258 (6th Cir. 2005); *see Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under *Strickland*, a defendant first must show his or her counsel was deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Second, a defendant must show the deficient performance actually prejudiced the defense. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* In the plea context, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Wynn*, 663 F.3d 847, 851 (6th Cir. 2011). Notwithstanding, both elements must be shown. Therefore, to meet his burden, the defendant must show that the attorney's performance was deficient, and that this specific deficiency was the antecedent without which the Defendant's sentence would not have been imposed. *Strickland*, 466 U.S. at 687.

It is true that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. Nevertheless, an attorney representing a criminal defendant does have some specific, articulable duties. All attorneys owe their clients a duty of loyalty; a duty to avoid conflicts; a duty to advocate, inform, and consult; and counsel has a duty "to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." *Id.* "A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." *Hughes v. United States,* 258 F.3d 453, 457 (6th Cir. 2001); *see also Miller v. Francis*, 269 F.3d 609, 615-16 (6th Cir. 2001). In evaluating an attorney's duties to his or her client and the sufficiency of an attorney's performance of them, however, courts must be highly deferential. "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of

effective assistance of counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (quotation and citation omitted). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *Strickland,* 466 U.S. at 691.

## Ground One

Duplessis initially argues that Scharg's representation was deficient because he failed to provide him with correct advice regarding the elements of the § 924(c) offense. The evidentiary hearing in this case focused on whether Scharg expressly advised Duplessis of these elements. Similar to his affidavit, at the hearing, Duplessis testified numerous times that Scharg had advised him that he could be found guilty of Count 2 because the gun and the drugs had been found in his apartment. [R. 75-2 at 23 ¶5]. However, to the extent Duplessis continues to argue that he was *unaware* that knowledge of the firearm is required for a conviction under the § 924(c) charge, the undersigned remains under the belief that this claim is directly refuted by the record.

In evaluating the totality of events encompassing both change-of-plea hearings, Duplessis cannot plausibly argue that he was uninformed that knowledge of possession of the handgun was required to be convicted of the § 924(c) charge. This Court previously described the measures it underwent to make sure Duplessis carefully understood the weight of his guilty plea before ultimately accepting his plea.

> [D]uring the first change-of-plea hearing [Duplessis stated] that he did not know that the gun was in his apartment. [Record No. 72, p. 9] As a result of this assertion, the Court initially declined to accept the defendant's guilty plea to Count 2. [*Id.* at 37] Faced with a trial on the issue, Duplessis later moved to again be re-arraigned on this count. During the subsequent hearing, Duplessis confirmed that the factual basis for the plea was true and accurate and that he was guilty of the offense. [*Id.* at 21] The Court asked him to state the conduct in which engaged that established guilt of this charge, and he responded "possessed the handgun

[R. 91 at 11-12]. Even before the sentencing hearing, in consideration of Duplessis's Motion to Withdraw the Guilty Plea as to Count Two Only [R. 49], this Court again analyzed whether Duplessis had fully understood the ramifications of his guilty plea.

> The defendant's decision to enter into a guilty plea was not made in haste or confusion. Both the written Plea Agreement and the PSR state that Count Two included a mandatory minimum sentence of five years to run consecutive to any other sentence imposed. [Record No. 44, p. 2; PSR, p. 12] This was also made clear to the defendant at his second plea hearing on September 8, 2014. [09/08/14 Transcript, p. 4] Further, Duplessis had ample time to consider the charges and evidence against him, and to weigh his alternatives. The record reflects that Duplessis's counsel was provided a significant amount of information and evidence to allow him to make an informed decision regarding whether to change his plea or proceed to trial. As a result of the compelling evidence, it appears that Duplessis concluded that a change of plea was the prudent course to follow
> …
> Duplessis originally contested the factual basis of Count Two at his plea hearing on July 7, 2014. However, at his subsequent plea hearing on September 8, 2014, he made clear that he was guilty of Count Two.
>
>> THE COURT: [I]s it your intention to enter a plea of guilty to Count 2 because you are in fact guilty of that charge?
>>
>> DEFENDANT: Yes, sir.
>>
>> . . .
>>
>> THE COURT: Mr. Duplessis, can you tell me in your own words what it was that you did to be guilty of Count 2?
>>
>> DEFENDANT: Possessed the handgun.
>>
>> THE COURT: Did you possess the handgun in furtherance [of] the drug trafficking charge contained in Count 1 that we discussed?
>>
>> DEFENDANT: Yes, sir.
>>
>> THE COURT: Is the firearm the firearm that is actually listed in the indictment?
>>
>> DEFENDANT: Yes, sir.
>>
>> THE COURT: And did you possess that firearm on or about April 9, 2014 in Fayette County which is in the Eastern District of Kentucky?

> DEFENDANT: Yes, sir.
>
> It is clear to the Court that the defendant was fully aware of the evidence against him and the conduct leading to the gun charge. With the trial in sight, Duplessis made the decision to enter a guilty plea as to Count Two, fully aware of the consequences.

[R. 58 at 5, 11-12 (citing 09/08/14 Transcript, p. 8)].

The testimony at the evidentiary hearing did not weaken the belief that Duplessis had not been ill-advised about the elements surrounding the guilty plea under § 924(c). When Duplessis was asked why he had admitted to knowingly possessing the firearm, he simply stated that "he just wanted [to get this] over with," and said that, after speaking with Scharg, he believed that if he went to trial, he could be convicted. [1:10:25 – 1:11:41]. This Court does not challenge what was Duplessis's motivations for having pleaded guilty to this offense. Given the evidence that was found in the closet and the positioning of the gun, we previously determined that Scharg did not improperly advise Duplessis that the Government possessed sufficient evidence to establish a § 924(c) violation. [R. 91 at 14]. For this reason, to the extent that Duplessis continues to argue that he was uninformed about the elements of the charge or that the plea was involuntary given the attorney's erroneous advice, this argument simply fails.

The Court's confidence in the outcome of the case is not undermined by the testimony given at the hearing. Though Scharg may have told Duplessis that the Government had substantial evidence against him, the decision to ultimately plead guilty was his. Accordingly, this Court made sure that Duplessis could make the factual basis before accepting the plea.

> The decision to plead guilty—first, last, and always—rests with the defendant, not his lawyer. Although the attorney may provide an opinion on the strength of the government's case, the likelihood of a successful defense, and the wisdom of a chosen course of action, the ultimate decision of whether to go to trial must be made by the person who will bear the ultimate consequence of a conviction.

*Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003). For these reasons, the undersigned **RECOMMENDS** that this Court find that Duplessis has not met his burden of establishing that his counsel was deficient, and likewise, that Duplessis was fully aware of the elements requiring a conviction under § 924(c).

## Ground Two

In his second ineffective assistance of counsel claim, Duplessis argues that Scharg erred in failing to obtain DNA and fingerprint evidence relating to the firearm. At the evidentiary hearing, Duplessis maintained that, had Scharg done so, such evidence would have established that he never handled the firearm. Nevertheless, this Court previously opined that whether Duplessis physically handled the gun is not dispositive under the § 924(c) analysis. [R. 91 at 14-15]. The Court concluded that, considering the government's evidence, "Duplessis ha[d] not established that his attorney's tactical decision was constitutionally deficient." [*Id.* at 16]. The evidentiary hearing did not acknowledge anything to the contrary that would warrant an alternative outcome.

> The wisdom of counsel's strategy must be judged based on the circumstances as a whole as they stood at the time counsel made his decisions. *Strickland* instructs that '[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'

*Hodge v. Haeberlin,* 579 F.3d 627, 642 (6th Cir. 2009) (quoting *Strickland,* 466 U.S. at 689)).

At the hearing, Scharg indicated that he and Duplessis had spoken about the possibility of having the firearm DNA tested, however, Duplessis "acquiesced" to Scharg's trial strategy of not having it tested, and instead raising this issue to the jury at trial. When Duplessis was questioned on this issue, he remained adamant in his belief that, if the testing had been conducted, his innocence would be revealed. Notwithstanding, even if Scharg's performance was somehow deficient, Duplessis cannot show that but for his counsel's failure to procure a DNA and fingerprinting of the

firearm, the result would have been different. Even if the DNA testing *had* been conducted and the results came back inconclusive, constructive possession is enough to be found guilty, and actual, physical possession is not required to support a finding of guilt by plea or verdict as to Count 2. At any rate, Duplessis chose to forego having to go to trial, and instead took the second plea agreement that had been offered to him.

"Where the defendant fails to overcome the presumption that the challenged action 'might be considered sound trial strategy,' we will not find ineffective assistance." *Hodge*, 579 F.3d at 642 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Duplessis has not overcome the presumption that Scharg's decision was grounded in trial strategy. *See Jackson v. Bradshaw*, 681 F.3d 753, 760 (6th Cir. 2012) (noting that counsel is not deficient where he "make[s] a reasonable decision that makes particular investigations unnecessary"); *see also Berry v. Palmer*, 518 Fed.Appx. 336, 340 (6th Cir. 2013) (finding that counsel's performance was not deficient for failing to obtain DNA analysis of unidentified hair found in the victim's bed, and rejecting the petitioner's belief that, had this been done, doubt would be casted on his guilt).

In sum, the undersigned continues to agree with this Court's rationale that Duplessis cannot maintain an ineffective assistance of counsel claim on this basis. Accordingly, the undersigned **RECOMMENDS** that this Court find that Duplessis has not met his burden of establishing that his counsel was deficient for not obtaining DNA and fingerprint evidence relating to the firearm.

## CONCLUSION

A § 2255 petitioner must receive an evidentiary hearing on his claims "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The Sixth Circuit Court of Appeals concluded that this Court had erred in denying Duplessis's claims without an evidentiary hearing. On October 5, 2018, the parties came

before this Court for a limited hearing on Duplessis's ineffective-assistance claims. Consequently, this recommended disposition comes after having evaluated the credibility determinations and the content of conversations between Duplessis and his attorney, Mr. Scharg, that occurred off the record.

For the reasons outlined above, the undersigned **ADOPTS** and **INCORPORATES**, by reference, the previously filed Report and Recommendation [R. 89], and this Court's Memorandum Opinion and Order [R. 91]. **IT IS HEREBY RECOMMENDED** that Duplessis's motion to vacate under 28 U.S.C. § 2255 [R. 75], be **DENIED**.

Particularized objections to this Report and Recommendation must be filed within fourteen (14) days of the date of service of the same or further appeal is waived. 18 U.S.C. § 636(b)(1); *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Bituminous Cas. Corp. v. Combs Contracting Inc.*, 236 F. Supp. 2d 737, 749–50 (E.D. Ky. 2002). Generalized objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(1).

This the 1st day of November, 2018.



Signed By:
*Edward B. Atkins*  *EBA*
United States Magistrate Judge